# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Reginald C. Howard

       Plaintiff

v.

Kyle Groover

       Defendant

Case No.: 2:17-cv-01002-JAD-BNW

**Order Granting in Part and Denying in Part Defendant's Motion for Judgment as a Matter of Law, Denying Defendant's Motion to Supplement, and Denying Without Prejudice Plaintiff's Motion for Attorneys' Fees**

[ECF Nos. 156, 163, 165]

Nevada inmate Reginald Howard was awarded $212,500 after a jury found corrections officer Kyle Groover liable for violating his First and Eighth Amendment rights. $12,500 of that award was for compensatory damages. The remaining $200,000 was awarded as punitive damages, resulting in a ratio of punitive-to-compensatory damages of 16:1. Groover moves for judgment as a matter of law, remittitur, or a new trial, contending that Howard didn't present sufficient evidence to support the jury's liability findings, he is entitled to qualified immunity, the court made evidentiary errors that warrant a new trial, and the punitive damages that the jury awarded offend due process. Howard opposes and seeks attorneys' fees for the short period of time that he was represented by pro bono counsel.

I grant Groover's motion in part. He is entitled to qualified immunity on Howard's Eighth Amendment deliberate-indifference claim, but there was substantial evidence to support the jury's finding that he retaliated against Howard, violating clearly established First Amendment law. So I vacate the judgment against Groover on Howard's Eighth Amendment claim but confirm the judgment on his First Amendment claim. But because the punitive damages the jury awarded for the First Amendment violation are excessively disproportionate to

the compensatory damages, I remit a portion of that award.  And I deny Groover's alternative motion for a new trial because he has not identified any errors that would warrant such relief. Finally, because my alteration of Howard's judgment may impact the amount of attorneys' fees that can be awarded under the Prison Litigation Reform Act, I deny Howard's motion for fees without prejudice to the filing of a new motion for fees that takes these developments into consideration.

## Background

**A.    Procedural history**

In 2017, Howard filed this civil-rights action against 25 Nevada Department of Corrections (NDOC) employees, contending that the defendants violated the Constitution when they acted deliberately indifferent to his medical needs, retaliated against him for filing grievances and lawsuits, used excessive force against him, and hampered his free exercise of religion.[1]  The court screened his initial and amended complaints and dismissed with prejudice all claims against four of those defendants.[2]  In 2021, the parties filed cross-motions for summary judgment on the remaining claims.[3]  I entered judgment in favor of various defendants and claims, leaving only two claims against correctional lieutenant Kyle Groover: Eighth Amendment deliberate indifference and First Amendment retaliation for an incident that occurred while Howard was incarcerated at the Southern Desert Correctional Center (SDCC).[4] After the summary-judgment motions were resolved, Howard's case was referred to this

---

[1] ECF No. 4; ECF No. 5.

[2] ECF No. 11 at 14.

[3] ECF No. 58; ECF No. 62.

[4] ECF No. 80.

district's pro bono program.[5]  In late 2022, attorneys Travis Barrick and Andréa Vieira appeared to represent Howard at trial.[6]  Nathan Lawrence, Esq. joined Team Howard in May 2023.[7]

**B.    Facts elicited at trial**

      ***1.    Howard's testimony***

      Both of Howard's surviving claims against Groover arose from a single incident on July 13, 2016.  That day, Groover attempted to submit an emergency grievance asserting that officers were threatening to write him up if he was seen walking without the crutches that were given to him for use when needed because of back pain.[8]  He claimed that the shift commander, Groover, was the one who told the officers to write him up.[9]  He gave the grievance to the officer in his unit, but she returned it and told Howard that he had to hand-deliver the grievance to Groover, who was at the culinary hall approximately 150 yards away.[10]  Howard tried to walk to the grievance to Groover, but his severe back pain forced him to call a man-down when he was 75 to 80 feet from Groover.[11]  Howard theorized that Groover's actions were deliberately indifferent to his serious medical needs and that Groover took those actions in retaliation for Howard's penchant for papering prison staffers with grievances.

      At trial, Howard presented evidence of his medical condition in 2016.  He showed that the day after he arrived at SDCC he filed an emergency grievance because he hadn't been

---

[5] ECF No. 104.

[6] ECF No. 105; ECF No. 107.

[7] ECF No. 118.

[8] *See* Trial Ex. 57 (July 13, 2016, emergency grievance); ECF No. 162 at 217 (Howard's trial testimony).

[9] *Id.*

[10] *See* ECF No. 166 at 20–22 (Howard's trial testimony).

[11] *Id.*

evaluated by the prison's medical staff and needed a bunk restriction because of a nerve and back injury.[12]  Groover denied that grievance, stating that it wasn't an emergency.[13]  Howard was able to see medical staff later that day, and his progress notes indicated that he suffered from sciatica and radiculopathy.[14]  Additional medical records introduced at trial showed that Howard suffered from chronic low-back pain, was occasionally unable to move, and took several medications for his condition.[15]  MRIs showed "dextroscoliosis with multilevel degeneration" in Howard's lower back.[16]

Howard also proved that he filed emergency grievances in January 2016, in which he complained that he was unable to walk to culinary to eat hot meals because of his pain, though he needed those meals to eat with his medications.[17]  Groover denied those grievances.[18]  Howard also testified about an incident in June 2016, in which Howard was ordered to move to a different cell but he couldn't move his heavier items because of back pain.  Groover filed charges against Howard for "refusing a bed move," and Howard was placed in solitary confinement as a result.[19]  Howard testified that, though medical gave him crutches for use only when needed for his pain, Groover told the officers in Howard's unit to write him up if he was caught walking freely.[20]  Howard also testified that, even if Groover called medical before

---

[12] Trial Ex. 3.

[13] *Id.*

[14] Trial Ex. 4.

[15] Trial Ex. 18; Trial Ex. 19.

[16] Trial Ex. 33.

[17] Trial Ex. 7 (January 24, 2016, grievance); Trial Ex. 14 (January 26, 2016, grievance).

[18] *Id.*

[19] *See* Trial Ex. 513; ECF No. 162 at 210.

[20] ECF No. 162 at 215.

denying his various grievances, Groover may have asked the wrong questions: when Howard sought help moving his belongings, Groover asked if he had a bed-move restriction but didn't ask about lift restrictions.[21]

### 2. *Groover's testimony*

Groover took the stand at trial and testified that he didn't have access to Howard's medical records and that he called the medical staff whenever Howard filed an emergency grievance, but they reported that Howard didn't have any medical restrictions that were relevant to Howard's requests.[22]  He also admitted that he was aware that Howard complained of back pain and being unable to walk because he responded to Howard's grievances in December 2015 and January 2016.[23]  He further testified that he knew medical did not require Groover to use his crutches at all times and admitted that, in every instance that he denied Howard's emergency grievances, he did so "without actually determining the facts."[24]

Groover also testified that he was familiar with Administrative Regulation (AR) 740, the prison's regulation governing emergency grievances.[25]  He agreed that the regulation permitted inmates to hand an emergency grievance to any officer, who would then deliver the grievance to the shift commander.  He admitted that the regulations did not "require the inmate to take any

---

[21] ECF No. 166 at 68.

[22] *See, e.g.*, ECF No. 166 at 163 (Groover confirming that he isn't able to access an inmate's medical records); ECF No. 166 at 94–95 (Groover testifying that he "called . . . our infirm up" when Howard filed an emergency grievance and "learned that he . . . had nothing); ECF No. 166 at 112–113 (Groover's testimony that he called medical when Howard submitted his January 2016 grievances and was told that Howard "did not have an lay-ins or any restrictions").

[23] ECF No. 166 at 112–15.

[24] *Id.* at 124–25.

[25] *Id.* at 98, 173 (Groover testifying that he "control[s] the information that was provided to medical" and does not have "training in conveying medical information"); *see also* Trial Ex. 80 (NDOC's administrative regulations).

additional action besides" handing the emergency grievance to any staff member.[26]  But Groover also testified that he commonly asked inmates to hand-deliver grievances because the prison is short-staffed, meaning that officers couldn't easily leave their posts to deliver them, and because he believed he could resolve the grievances faster if he spoke with the inmates when they made the grievance.[27]

Groover admitted that he wasn't sure if the unit Howard was housed in was understaffed on the day he made Howard bring him the grievance.[28]  Groover and Howard both testified that Groover and two other officers were waiting for Howard at the top of the path running from Howard's unit to culinary and that all three of them watched Howard laboriously walk toward them until he fell.[29]  Howard called a man-down and Groover called medical, as required by prison regulations.[30]  In the approximately two minutes while Howard was waiting for assistance, Groover scrawled a denial on the emergency grievance and gave it back to Howard.[31]

### 3.     *The jury's verdict*

At closing arguments, Howard's counsel asked the jury to award $10,000 in compensatory damages ($5,000 for each claim) and $100,000 in punitive damages ($50,000 for each claim).  The jury returned a verdict in Howard's favor that far exceeded that request: they awarded Howard $7,500 in compensatory damages and $125,000 in punitive damages for his

---

[26] *Id.* at 101.

[27] *Id.* at 163, 166.

[28] *Id.* at 142.

[29] *Id.* at 22, 85, 144.

[30] *Id.* at 22.

[31] *Id.* at 23–24, 86–87.

Eighth Amendment claim, and $5,000 in compensatory damages and $75,000 in punitive damages for his First Amendment claim.[32]

**Discussion**

**A.    Groover's motion for leave to supplement [ECF No. 165]**

Groover moves to supplement his motion for judgment as a matter of law or a new trial, contending that he was unable to receive trial transcripts in time to include record citations and support for his motion.[33]  Eleven days after the deadline for a motion challenging the verdict, Groover filed a supplement containing an updated statement of facts and argument with direct citations to the record as support.[34]  Howard opposes Groover's motion, contending that Groover's request would "put the total page count in excess of the number allowed by [Local Rule] 7-3 and is essentially an attempt to exceed the jurisdictional time limit for filing a post-trial motion."[35]  He also contends that Groover did not prove that he paid the deposit for transcripts in a timely manner and could have ordered transcripts with a shorter turn-around time, but chose not to.[36]

Under this district's Local Rule 7-2(g), "a party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause."[37]  "Good cause usually exists if there is a showing that the party seeking good cause was reasonably diligent."[38]

---

[32] *See* ECF No. 167 at 95.

[33] ECF No. 165.

[34] ECF No. 171.

[35] ECF No. 176 at 2.

[36] *Id.* at 3–4.

[37] L.R. 7-2(g).

[38] *Borenstein v. Animal Foundation*, 526 F. Supp. 3d 820, 849 (D. Nev. 2021).

On this record, I cannot determine whether Groover was reasonably diligent in ordering trial transcripts in time to prepare his new-trial motion because he did not provide proof that he paid the deposit in a timely manner—a prerequisite to delivery of the transcripts.[39]  And I hesitate to allow supplementation of motions brought under Rules 50(b) and 59, as the Federal Rules of Civil Procedure (FRCP) prohibit extensions of time to file those motions.[40]  Groover's supplemental brief was filed well after the deadline, and Groover does not provide authority showing that such supplementation doesn't violate the rule's strict time limitations.  I also find that the supplement is unnecessary.  I have read the trial transcripts and consider Groover's original motion in light of that record, and Groover's supplemental facts and argument do not meaningfully alter my analysis.  So I deny Groover's motion to supplement.

**B.  Groover's renewed motion for judgment as a matter of law [ECF No. 163]**

FRCP 50 permits a defendant to bring a motion for judgment as a matter of law if the plaintiff "has been fully heard on an issue during a jury trial" and the defendant believes that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [plaintiff] on that issue."[41]  If the court does not grant the motion prior to a jury verdict, the movant may file a renewed motion for judgment as a matter of law within 28 days after entry of judgment.[42]  Groover moved for judgment as a matter of law at the close of Howard's case.[43]  I denied it,

---

[39] *See* ECF No. 176 at 4; ECF No. 165-1 at 8 (transcript-ordering FAQs, noting that "<u>Transcripts are not started and the time for delivery does not start to run until the deposit has been received.</u>").

[40] Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).").

[41] Fed. R. Civ. P. 50(a).

[42] *Id.* at 50(b).

[43] ECF No. 166 at 177.

finding that there was sufficient evidence for a reasonable jury to find against Groover based on Howard's testimony.[44]

Groover now moves for judgment as a matter of law, contending that there was insufficient evidence of the alleged constitutional violations.  "A renewed motion for judgment as a matter of law is properly granted only if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."[45]  The trial court must uphold the jury's verdict "if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion."[46]  Courts may not re-weigh the evidence the jury considered.  Instead, courts must "simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion."[47]

Groover also contends that he is entitled to qualified immunity on both claims.  Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[48]  Courts "have discretion to choose which qualified-immunity prong to address first" and, depending on the conclusion reached for the first-analyzed prong, "need not address the other."[49]  When qualified immunity is raised as a

---

[44] *Id*. at 184–86.

[45] *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (cleaned up).

[46] *Id.* (cleaned up).

[47] *Id.* (cleaned up).

[48] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[49] *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (departing from the mandate in *Saucier v. Katz*, 533 U.S. 194, 207 (2001), that the first question must be resolved first)).

defense after trial, "deference to the jury's view of the facts persists throughout each prong of the qualified immunity inquiry."[50]  "[U]nlike a motion to dismiss or motion for summary judgment, [the court] must defer to the facts as they were reasonably found by the jury—[the court does] not draw [its] own inferences from them."[51]

### 1.    *Qualified immunity shields Groover from judgment on Howard's Eighth Amendment claim.*

A prisoner who claims inadequate medical care must show that prison officials were deliberately indifferent to his serious medical needs.[52]  A plaintiff can prevail on a deliberate-indifference claim if he can show that prison officials denied, delayed, or intentionally interfered with medical treatment and that the delay or interference caused further injury.[53]  The indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, medical malpractice, or even gross negligence are insufficient to establish deliberate indifference.[54]  A mere difference of medical opinion likewise does not suffice;[55] a prisoner must instead show that the course of treatment chosen was medically unacceptable under the circumstances and taken in conscious disregard to his health.[56]

---

[50] *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 456 (9th Cir. 2013) (quoting *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 528 (1st Cir. 2009)).

[51] *Id.* at 459 (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (affirming district court's deference to the jury's finding that the defendant acted with unconstitutional subjective intent when ruling on his qualified-immunity defense after a jury verdict).

[52] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[53] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

[54] *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013).

[55] *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

[56] *See Toguchi v. Chung*, 291 F.3d 1051, 1058 (9th Cir. 2004).

Howard has not shown that Groover violated clearly established Eighth Amendment law by making him walk 150 yards to hand-deliver his grievance. While Howard established that Groover was aware of Howard's repeated complaints of back pain and may have known that the walk could cause pain, he did not establish that Groover knew that making him walk on that particular day would cause pain so severe as to constitute conscious disregard for Howard's medical needs. Groover testified that he called medical to check Howard's relevant medical restrictions before he denied each of Howard's emergency grievances and was told that he didn't have any "lay-ins or restrictions."[57]  And the medical evidence that Howard introduced indeed confirmed that he had back pain, but it did not establish that his pain was so severe that he couldn't walk. While Howard suggests that the jury didn't find Groover's testimony about his conversations with the medical staff credible because it conflicted with medical records describing his condition,[58] there was insufficient evidence to conclude that Groover was on clear notice that making an inmate with intermittent back pain walk 150 yards would constitute deliberate indifference to that serious medical condition. So I vacate the jury's award on Howard's deliberate-indifference claim and enter judgment in favor of Groover on that claim.

### 2.    *Groover is not entitled to qualified immunity from Howard's retaliation claim.*

Prisoners have a First Amendment right to file prison grievances and to pursue civil-rights litigation in the courts.[59]  To prevail on a First Amendment retaliation claim in the prison context, a prisoner must prove (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled his exercise of his First

---

[57] ECF No. 166 at 113; *see also id.* at 116 (Groover testifying that the nurses didn't have "anything on file" for Howard).

[58] *See* ECF No. 175 at 15.

[59] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

1   Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional

2   goal.[60]

3            a.       **Sufficient evidence supports the jury's finding that Groover violated**

4                     **Howard's First Amendment rights.**

5            Groover argues that "there was no evidence that Groover knew Howard was the one who

6   submitted the emergency grievance, nor was there any evidence that Groover knew Howard was

7   having difficulty with pain or walking on July 13 when Groover ordered the grievant to bring the

8   emergency grievance to him at culinary."[61]  But there was plenty of circumstantial evidence[62]

9   from which a jury could infer that Groover learned of Howard's pain complaints from previous

10  grievances that Howard had filed and that Groover rejected or denied.  And even if one accepts

11  that Groover didn't initially know that the grievance was from Howard, both Howard and

12  Groover testified that Groover was waiting 150 yards away from Howard's unit, watching

13  Howard slowly struggle to reach him.

14          Groover also contends that Howard "conceded Groover's lack of knowledge of his

15  medical condition" when he testified that Groover had no access to his medical file and that he

16  didn't know exactly what medical condition he was suffering from at the time.[63]  But the fact that

17  Groover didn't study the contents of Howard's medical file does not mean that Groover had no

18  knowledge of Howard's back pain.  That was proven by evidence of several prior emergency

19

20  [60] *Id.* at 567–68.

21  [61] ECF No. 163 at 14.

22  [62] *Hines v. Gomez*; 108 F.3d 265, 268 (9th Cir. 1997) (finding that circumstantial evidence
    warranted a jury's finding of retaliation against a prisoner); *Pratt v. Rowland*, 65 F.3d 802, 808
23  (9th Cir. 1995) (holding that "timing can properly be considered as circumstantial evidence of
    retaliatory intent" in prisoner retaliation cases).

    [63] ECF No. 163 at 5.

grievances in which Howard complained of pain so severe that he could not walk to culinary, all of which Groover denied.  That evidence is sufficient for a reasonable jury to conclude that Groover knew Howard claimed to suffer from severe pain such that forcing Howard to walk to culinary to deliver a grievance would intentionally inflict pain on Howard as a punishment for filing complaints.[64]

There was also plenty of evidence to suggest that Groover knew Howard was filing yet another grievance and Groover intended to punish Howard for doing so by forcing him hand-deliver that grievance.  That conclusion is supported by evidence showing that Groover (1) previously denied Howard's grievances and wrote him up for previous medical issues; (2) automatically denied his grievance after Howard could not complete the walk and was still on the ground waiting for medical assistance to arrive; and (3) failed to follow clear regulations requiring emergency grievances "received by any staff member" be "immediately delivered to the nearest supervisor"[65]—clearly establishing that an inmate need only deliver his emergency grievance to any staff member, not to the shift supervisor.

Groover contends that he presented "uncontested testimony" that he had the grievance brought to him "for the legitimate penological goal of trying to address the alleged emergency as quickly as possible" and because he couldn't leave his post, citing the fact that the prison has been understaffed for years.  But when asked whether he knew if Howard's unit was specifically

---

[64] While I found *supra* that the same evidence couldn't support a deliberate-indifference claim, that finding does not dictate my analysis here.  To prove retaliation, one need not show that the defendant took an action he knew to be medically unacceptable under the circumstances.  A plaintiff only need show that the defendant took an adverse action against him to retaliate against the assertion of his rights.  Here, Howard was able to prove that Groover acted with knowledge that his actions would be adverse to Howard because they would cause pain, but not that Groover knew his actions would intentionally interfere with or cause a serious medical condition.

[65] *See* Trial Ex. 80.

13

1 | understaffed that day such that quick delivery of the grievance was impossible, Groover

2 | answered that he did not know.  And Howard testified that there were reasons why staff

3 | members—not inmates—delivered the grievances to shift supervisors, including inmate safety.

4 | Further, both Howard and Groover testified that Groover was standing with at least two other

5 | guards, calling into question Groover's testimony that he couldn't leave for mere minutes to take

6 | the grievance from the officer Howard originally delivered it to.  Given the context and

7 | circumstances surrounding Groover's decision to make Howard hand-deliver his grievance in

8 | person contrary to typical protocol and administrative regulations, a reasonable jury didn't have

9 | to lend credibility to Groover's post-hoc rationalization for his actions.

10 | ### b. *Groover's actions violated clearly established law.*

11 | "The prohibition against retaliatory punishment is clearly established law in the Ninth

12 | Circuit, for qualified immunity purposes."[66]  It's also clearly established that "[p]risoners have a

13 | First Amendment right to file grievances against prison officials and to be free from retaliation

14 | for doing so."[67]  A court does not need to find that the "very action in question has previously

15 | been held unlawful" for the action to violate clearly established law.[68]  The Ninth Circuit has

16 | held that denying medical care, threatening transfer, destroying property, and other actions

17 | clearly violated an inmate's constitutional rights when done to chill an inmate's right to file

18 | grievances or lawsuits.[69]  It isn't an imaginative stretch for an objectively reasonable officer to

19 |

20 | [66] *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005) (cleaned up).

[67] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

21 | [68] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

22 | [69] *See Rhodes*, 408 F.3d at 568 (finding a violation of clearly established law when prison guards "arbitrarily confiscated, withheld, and eventually destroyed [the inmate's] property, threatened to
23 | transfer him to another correctional institution, and ultimately assaulted him"); *Bordheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (noting that "[t]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect");

know that forcing an inmate to endure pain in retaliation for filing grievances is a violation of

clearly established retaliation law.  So I deny Groover's motion for judgment as a matter of law

on Howard's First Amendment retaliation claim.  Sufficient evidence supported the jury's

verdict, and Groover is not entitled to qualified immunity from the consequences of his blatant

retaliation.

**C.    Groover is not entitled to a new trial.**

Groover alternatively contends that he is entitled to a new trial because he was unduly

prejudiced by: (1) Howard's use of a wheelchair during the proceedings; (2) the court's decision

to admit exhibits that were produced in discovery but not listed in the joint pretrial order; and (3)

Howard's counsel's over-the-top closing argument.[70]  Rule 59(a) permits a trial court to grant a

new trial "on all or some of the issues . . . for any reasons for which a new trial has heretofore

been granted in an action at law in federal court."[71]  Although no standard is articulated in the

rule, courts have found new trials warranted if "the verdict is contrary to the clear weight of the

evidence" or "is based upon false or perjurious evidence,"[72] or if a new trial is necessary "to

prevent a miscarriage of justice."[73]

---

*Tomel v. Hawaii*, 570 F. App'x 717, 719 (9th Cir. 2014) (unpublished) (finding allegations that prison official withheld medication and took plaintiff off sick-call lists sufficient to state a retaliation claim).

[70] ECF No. 163 at 15–17.

[71] Fed. R. Civ. P. 59(e).

[72] *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

[73] *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 (9th Cir. 2000) (citation omitted).

### 1. *Howard's use of a wheelchair does not warrant a new trial.*

Groover complains that Howard should not have been permitted to stay in a wheelchair throughout the trial, noting that he was able to stand while his handcuffs were removed and "represented to the court that he could possibly walk unassisted to the witness stand."[74]  That wheelchair was provided as a medical accommodation by Groover's employer, the NDOC.[75] Groover does not contest that Howard needed the wheelchair for his medical condition.  And he does not explain how Howard's ability to stand for a few seconds to remove hand restraints translates to the ability to walk to and from the witness stand.  Nor does the record clearly reflect that Howard suggested that he could walk to the witness stand unassisted.[76]

Regardless, Groover has also not shown that he was unduly prejudiced by Howard's use of a wheelchair.  Groover's counsel addressed Howard's wheelchair in opening arguments, noting that Howard did not use that wheelchair in 2016.[77]  He introduced video of Howard in 2016 walking around the prison, clearly showing that Howard was at least semi-mobile when the incidents at issue occurred.[78]  So because Groover does not sufficiently attach the significance of Howard's wheelchair use during trial to the jury's understanding of the facts as they existed in 2016, that aspect of trial does not warrant a new one.

---

[74] ECF No. 163 at 16.

[75] ECF No. 162 at 6.

[76] *See id.* at 6, 22.

[77] *Id.* at 115.

[78] ECF No. 166 at 152–153.

### 2.      The evidence admitted over Groover's objections was relevant and not overly prejudicial or confusing.

Groover complains that the court admitted evidence that Howard didn't list in the joint pretrial order that was created when he was still proceeding pro se.  In particular, Groover points to nine exhibits relating to Howard's medical condition and care that he believes were irrelevant "as they cast no light on Groover's knowledge of Howard's medical condition" and resulted in undue prejudice and jury confusion.[79]  Generally, a "party may not 'offer evidence or advance theories at . . . trial [that] are not included in the [pretrial] order or [that] contradict its terms.'"[80] But Federal Rule of Civil Procedure 16 allows the court to modify the pretrial order "to prevent manifest injustice."[81]

When Howard participated in the joint pretrial conference, he was representing himself. He objected to Groover's list of exhibits related to his medical care because he "d[id] not have his medical notes and ha[d] not reviewed the medical file."[82]  It wasn't until Howard obtained counsel that he was able to review his medical file and determine which records may be relevant to his case.  While not explicitly stated on the record when ruling on Groover's evidentiary

---

[79] ECF No. 163 at 4.  The admitted exhibits that Groover specifically objects to are: Trial Ex. 4 (a December 23, 2015, progress note concerning Howard's spine pain); Trial Ex. 18 (a January 27, 2016, progress note about Howard's spine pain); Trial Ex. 19 (January 27, 2016, prescription for medications related to Howard's pain); Trial Ex. 22 (March 30, 2016, CT scan of Howard's lumbar spine); Trial Ex. 35 (April 1, 2016, prescription for medications); Trial Ex. 45 (June 7, 2016, emergency grievance concerning Howard's bed move); Trial Ex. 47 (June 7, 2016, unusual-occurrence report detailing the circumstances of Howard's inability to move to a new cell); Trial Ex. 52 (medical records); Trial Ex. 60 (July 28, 2016, MRI of Howard's lumbar spine); Trial Ex. 83 (September 2, 2016, ["informal-grievance] response by Clark); Trial Ex. 84 (September 20, 2016, ["informal-grievance] response by Adams"].

[80] *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005) (quoting *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981)).

[81] Fed. R. Civ. P. 16.

[82] ECF No. 94 at 8 n.14–17.

objections, allowing Howard to introduce medical records produced by Groover but not listed in

the pretrial order was necessary to prevent manifest injustice.  And while not explicitly listed,

Howard's medical records were obviously contemplated by the scope of the issues described in

the pretrial order, which discussed in detail the disputes about the severity of Howard's

condition.[83]  Nor can Groover claim that he suffered unfair surprise from those documents—he

produced them in discovery.

Nor was the introduction of those medical records irrelevant.  Groover focuses only on

the fact that he did not view Howard's medical file in 2016 to argue that any additional medical

records were irrelevant to Howard's claims.  But to prove an Eighth Amendment deliberate-

indifference claim, Howard was required to show that he had a serious medical need.  One of the

key ways to do so is to introduce medical records showing that he had a medical condition

requiring treatment.  Howard's progress notes, CT scans, MRIs, and prescriptions were relevant

to that element of his deliberate-indifference claim.

Groover states without elaboration that the probative value of those medical records was

outweighed by their prejudicial effect and that they would confuse the jury.  But Groover was

able to establish that he did not see Howard's medical file and was unaware of the specifics of

Howard's medical condition as shown by those records.  So Groover has failed to show that the

ten medical records introduced over his objection confused or unduly prejudiced the jury.

### 3. *Howard's counsel's overblown closing arguments don't warrant a new trial.*

Groover also contends that Howard's counsel's closing and rebuttal arguments

improperly appealed to the passion and prejudice of the jury by "evok[ing] nationwide issues

---

[83] *Id.*; *First Nat'l Bank of Circle*, 652 F.2d at 886 (noting that pretrial orders should be "liberally construed to permit evidence and theories at trial that can fairly be said to be embraced within its language").

with the prison system [and] concerns about how NDOC as a whole treats Howard and other offenders[,] and s[eeking] to have the jury rule against Groover in order to teach NDOC and all other prison systems a lesson."[84]  He points to counsel's use of the word "they" throughout closing arguments to "discuss bad actors as opposed to Groover—the only defendant."[85]  He also contends that counsel's request that the jury return an award with punitive damages that were ten times higher than Howard's requested compensatory damages was plainly erroneous.[86]  Groover did not object to these statements during trial, nor did he move for a mistrial.

To determine whether improper attorney argument warrants a new trial, courts must determine "whether counsel's misconduct so permeated the trial as to lead to the conclusion [that] the jury was necessarily influenced by passion and prejudice in reaching its verdict."[87] "The federal courts erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial."[88]  To meet that threshold, the party seeking a new trial must show that opposing counsel's closing argument was plain or obvious error, that the error was "prejudicial or effects substantial rights," and that "review is necessary to prevent a miscarriage of justice."[89]  The Ninth Circuit has declined to find reversible error where "the alleged misconduct occurred only in the argument phase of the trial, . . . the remarks were

---

[84] ECF No. 163 at 16.

[85] *Id.*

[86] *Id.* at 16–17.

[87] *Cooper v. Firestone Tire and Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991).

[88] *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (quoting *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986)).

[89] *Id.* (citing *Smith v. Kmart Corp.*, 177 F.3d 19, 25 (1st Cir. 1999)).

isolated rather than persistent, . . . most of counsel's comments were not objected to at trial and [the party seeking a new trial] did not move for a mistrial at the end of argument."[90]

Groover has not carried his heavy burden to show that Howard's closing arguments necessarily influenced the jury such that the jurors relied on their passions and prejudices—and not the evidence presented at trial—when they found in Howard's favor.  Counsel's use of the term "they" was, in most instances, completely innocent.  Some referred to the actions of other NDOC actors to set the stage for elements that Howard had to prove: i.e., referring to NDOC's medical staff's actions to treat Howard's serious medical condition.[91]  The bulk of the remaining "they" references appear to refer to Groover and his lawyers, when discussing the evidence (or lack thereof) that they presented at trial.[92]  The occasional references to "they" as a stand-in for the bad actions of Groover *and* other NDOC actors are not obvious or offensive enough to conclude that the jury was necessarily influenced by those statements to enter a verdict intended to punish NDOC rather than Groover.  As a whole, Howard's closing arguments focused on Groover's wrongdoing, not on the collective actions of the NDOC.

---

[90] *Cooper*, 945 F.2d at 1107 (citing *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984)).  Groover contends that the plain-error standard is only used on appeal contesting improper argument after failing to object at trial.  The Ninth Circuit has explained that parties should object to improper argument during trial and before deliberations so the trial judge may "examine the alleged prejudice and to admonish counsel or issue a curative instruction, if warranted" and to assuage concerns that "allowing a party to wait to raise error after a negative verdict encourages that party to sit silent in the face of claimed error." *Hemmings*, 285 F.3d at 1193.  The same rationales are present here.  Groover's failure to object to Howard's closing arguments at trial prevented me from addressing his concerns before the jury deliberated, and applying a more liberal standard would encourage parties to stay silent during trial, only to raise objections in post-judgment motion.  I find that the plain-error standard applies here.

[91] ECF No. 167 at 27 lines 7–10.

[92] *See, e.g.*, *id.* at 28 lines 14, 20.

Groover also failed to object to Howard's closing and rebuttal arguments and did not immediately seek any curative instructions or move for a mistrial. To the extent that some of the statements in Howard's closing could be considered improper attempts to condemn the prison system and NDOC generally, those statements were limited to the argument phase and were isolated, not persistent. And Howard's request for a 10:1 ratio of punitive to compensatory damages does not rise to the level of plain error. Groover contends that asking for anything but a single-digit ratio would contradict Supreme Court precedent on the due-process constraints of punitive damages. But, as the Supreme Court has explained, there is no bright-line rule for when a punitive-damages award becomes excessive,[93] and at least one Ninth Circuit panel has upheld a 28:1 damages ratio, while recent opinions have approved 7:1 and 9:1 ratios.[94] Counsel's request for a 10:1 ratio was not so clearly erroneous that it warrants a new trial. So, because Groover has not shown that Howard's attorneys committed plain error or improperly influenced the jury in their closing arguments, I deny his motion for a new trial on those bases.

## D.     Remittitur of remaining award

All that remains is Howard's award for the First Amendment retaliation claim. The jury awarded Howard $5,000 in compensatory damages and $75,000 in punitive damages for that claim. Groover contends that the evidence presented did not show malice or reckless indifference to support the award and that a 15:1 ratio of punitive-to-compensatory damages

---

[93] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 582–83 (1996) ("We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case.") (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 458 (1993)).

[94] *Swinton v. Potomac Corp.*, 270 F.3d 794, 818 (9th Cir. 2001) (upholding an award of $1,000,000 in punitive damages and $35,600 in compensatory damages); *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 776 (9th Cir. 2005) (finding a 9:1 ratio acceptable); *Zhang v. Am. Gem. Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) (approving of a 7:1 ratio in a racial discrimination case).

1   offends due process.[95]  While a reasonable jury could infer malice from the evidence presented at

2   trial, the punitive-damages award is grossly disproportionate to Howard's compensatory

3   damages.  So I reduce that punitive award to $45,000, resulting in a constitutionally acceptable

4   9:1 ratio and $50,000 in total damages.

5        ***1.    A reasonable jury could infer malice from Groover's actions.***

6        "Punitive damages are awarded in the jury's discretion 'to punish [the defendant] for his

7   outrageous conduct and to deter him and others like him from similar conduct in the future.'"[96]

8   A plaintiff seeking punitive damages must show by clear and convincing evidence that the

9   defendant's conduct was "motivated by evil motive or intent, or . . . involves reckless or callous

10  indifference to the federally protected rights of others."[97]  The jury was instructed that it needed

11  to conclude by clear and convincing evidence that Groover's conduct was "malicious,

12  oppressive, or in reckless disregard of the plaintiff's rights," that "[c]onduct is malicious if it is

13  accompanied by ill will or spite or if it is for the purpose of injuring the plaintiff," and that action

14  is taken in reckless disregard for the plaintiff's rights if "it reflects complete indifference to the

15  plaintiff's safety or rights or if the defendant acts in the face of a perceived risk that its actions

16  will violate the plaintiff's rights under federal law."[98]

17       The evidence presented at trial at the very least supports a punitive damages award based

18  on Groover's reckless indifference to Howard's First Amendment rights, his health, and his

19  safety.  The record supports the conclusion that Groover knew Howard suffered from debilitating

---

[95] ECF No. 163 at 20.

[96] *Smith v. Wade*, 461 U.S. 30, 54 (1983) (quoting Restatement (Second) of Torts § 908(1)(1977)).

[97] *Id.* at 56.

[98] ECF No. 167 at 14–15.

back pain and forced him to hand deliver a grievance because Groover sought to cause him pain in retaliation for Howard's frequent exercise of his First Amendment rights.  Howard presented evidence that Groover had previously charged Howard with refusing to follow orders—a charge that resulted in Howard's solitary confinement—because Howard was unable to carry heavy objects when ordered to move cells.  The jury also heard evidence that, while Howard was lying on the ground waiting for medical staff to assist him, Groover summarily scrawled a denial on the emergency grievance that Howard was forced to hand-deliver.  These facts, along with evidence that Groover defied prison regulations when ordering Howard to hand-deliver the grievance, are sufficient to find malice or reckless disregard for Howard's rights to support a punitive-damages award.

> **2.      Nevertheless, due process requires reduction of Howard's punitive award.**

The due-process clause of the Fifth and Fourteenth Amendments prohibits "grossly excessive" punitive-damages awards.[99]  The United States Supreme Court has established three "guideposts" to determine whether an award is unconstitutionally disproportionate: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive-damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."[100]

---

[99] *BMW*, 517 U.S. at 562.

[100] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *BMW*, 517 U.S. at 575).

1

### a. Degree of reprehensibility

2    "The most important indicum of the reasonableness of a punitive-damages award is the

3    degree of reprehensibility of the defendant's conduct."[101]  Courts must consider whether "the

4    harm caused was physical as opposed to economic; the tortious conduct evinced an indifference

5    to or a reckless disregard of the health or safety of others; the target of the conduct had financial

6    vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm

7    was the result of intentional malice, trickery, or deceit, or mere accident."[102]  "It should be

8    presumed [that] a plaintiff has been made whole for his injuries by compensatory damages, so

9    punitive damages should only be awarded if the defendant's culpability, after having paid

10   compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to

11   achieve punishment or deterrence."[103]

12    The reprehensibility of Groover's conduct here warrants substantial punitive damages.

13   The harm that Howard suffered was both physical and psychological—Groover caused Howard

14   pain while also attempting to subvert his First Amendment right to present grievances.  His

15   conduct showed reckless disregard for the health and safety of prisoners under his control.

16   Howard presented evidence that Groover's conduct on July 13, 2016, was not isolated but rather

17   part of a series of actions that showed disregard for Howard's health and his rights.  Sufficient

18   evidence supports the conclusion that Groover's actions were intentional, not accidental.

19   Howard, as a prisoner, was not only financially vulnerable, but required to follow Groover's

20   harmful orders or face penalties for disobedience—penalties that Groover had inflicted on prior

21

22   _____

[101] *Id.* at 419.

23   [102] *Id.*

[103] *Id.*

1   occasions for Howard's inability to follow orders due to pain.  So I find that Groover's conduct
2   rises to a degree of reprehensibility warranting the jury's award of relatively high punitive
3   damages.

4                    **b.        *Ratio of compensatory-to-punitive damages***

5            While the Supreme Court has "been reluctant to identify concrete constitutional limits on
6   the ratio between harm . . . to the plaintiff and the punitive damages award," it has observed that,
7   "in practice, few awards exceeding a single-digit ratio . . . will satisfy due process."[104]  The High
8   Court has also implied that "an award of more than four times the amount of compensatory
9   damages might be close to the line of constitutional impropriety."[105]  "Nonetheless, because
10  there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than
11  those [that the Supreme Court has] previously upheld may comport with due process where 'a
12  particularly egregious act has resulted in only a small amount of economic damages.'"[106]
13  Indeed, the Ninth Circuit has warned district courts not to limit punitive damages to a 4:1 ratio,
14  particularly in cases in which "reprehensibility [is] especially high and the compensatory award[]
15  is relatively low."[107]  And the Supreme Court has indicated that it might entertain a higher ratio if
16  "the injury is hard to detect or the monetary value of noneconomic harm might have been
17  difficult to determine."[108]

18          Groover contends that the 15:1 ratio of punitive-to-compensatory damages awarded by
19  this jury for Howard's First Amendment claim clearly does not comport with due process under

20  _____

21  [104] *Id.* at 425.
    [105] *Id.* (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991)).
22  [106] *Id.*
    [107] *Riley v. Volkswagen Grp. of Am.*, 51 F.4th 896, 902–03 (9th Cir. 2022).
23  [108] *BMW*, 517 U.S. at 582.

this Supreme Court precedent.[109]  Howard responds that the Ninth Circuit's opinion in *Swinton v. Potomac Corp.*[110] allows higher ratios if the defendant's conduct was particularly reprehensible. In *Swinton*, the panel upheld a 28:1 ratio to punish overt racial discrimination.  But *Swinton* was decided before the Supreme Court's opinion in *State Farm Mutual Automobile Insurance Co. v. Campbell*, which ratified its earlier suggestion in *BMW of North America., Inc. v. Gore* that double-digit ratios would rarely survive a due-process challenge.[111]  While never explicitly overruling *Swinton*, the Ninth Circuit has recognized that the holding was limited by *State Farm* and has since not upheld such a disproportionate damages ratio.[112]  Since *State Farm*, the Ninth Circuit has upheld punitive damages between 1 and 9 times the compensatory award.[113]

Upon thorough review of Supreme Court and Ninth Circuit precedent grappling with the imperfect mathematics of constitutional punitive awards, I find that the 15:1 ratio that the jury awarded in this case is unconstitutionally excessive.  The award exceeds a single-digit ratio, and Howard has not shown that his case is the "exceedingly rare" instance in which a higher ratio can be tolerated.  But Groover's contention that no punitive damages should be awarded in this case

---

[109] ECF No. 163 at 19–23.

[110] *Swinton*, 270 F.3d 794.

[111] *See State Farm*, 538 U.S. at 425.

[112] *See, e.g.*, *Bains*, 405 F.3d at 776 (9th Cir. 2005) (noting that *Swinton* was decided "before the Supreme Court decided *State Farm*, which limits *Swinton*").

[113] *See, e.g.*, *id.* at 776–77 (overturning a 100:1 jury award and concluding that, at most, a punitive-damages award of nine times the compensatory damages would survive constitutional scrutiny); *Zhang*, 339 F.3d at 1044 (approving of a 7:1 ratio in a racial discrimination case); *Hardeman v. Monsanto Co.*, 997 F.3d 941, 975–76 (9th Cir. 2021) (reducing an award with punitive damages that totaled 14.2 times the amount of compensatory damages in a case against a company who knowingly sold a potentially cancer-causing pesticide without issuing warnings about the harm, finding that a 3.8:1 ratio was more acceptable but still "at the outer limits of constitutional propriety"); *Planned Parenthood of Columbia/Williamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 963 (9th Cir. 2005) (overturning punitive damages that were above a 9:1 ratio to compensatory damages).

goes too far.  As discussed *supra*, the jury could infer reprehensible conduct from Groover's

actions, and the compensatory damages awarded to make plaintiff whole for the noneconomic

harm he suffered were relatively low.  The monetary value of the injury sustained here—the

violation of Howard's First Amendment rights—is difficult to calculate, but the significance of

that harm, particularly in the prison context in which filing grievances and lawsuits is often the

only recourse for wrongs suffered, must not be understated.  So, after considering the harm

sustained and the appropriate ratio of punitive damages to punish Groover for inflicting that

harm, I find that punitive damages of $45,000—resulting in an award nine times Howard's

compensatory-damages award—is appropriate here.  I thus reduce the jury's total $80,000 award

for Howard's First Amendment retaliation claim to a total of $50,000.[114]

### 3. *Groover's indemnification arguments don't warrant further reduction or a new trial.*

Groover also notes that, because the state won't indemnify him for the punitive-damages

award, he may lack the ability to pay.[115]  So he suggests that the court should relieve him of that

obligation.  "[I]f the trial court deems it appropriate to reduce the punitive damages awards as so

grossly excessive in violation of due process on the basis of the individual defendants' ability to

---

[114] I do not consider the third guidepost—applicable civil penalties and awards in similar cases—because there are no statutory penalties or recovery caps for violations of constitutional rights under § 1983.  And neither party provided exemplary cases of the amount of punitive damages awarded in similar § 1983 cases.  So that factor does not impact my analysis.

[115] ECF No. 163 at 22.  Whether the state will or will not indemnify Groover appears disputed, and Howard argues that the state's stance on the issue creates an insurmountable conflict of interest between Groover and his representation (the Attorney General).  ECF No. 175 at 4 n.7, 17.  In reply, the Attorney General explains that, at this juncture, the focus is remitting all punitive damages, which is in the equal interest of Groover and the state.  ECF No. 184 at 8.  I will not wade into this concern because it hasn't been briefed as an issue requiring court intervention.  While I assume in this section that Nevada will not indemnify Groover for the punitive-damages award, I do not express any opinion on whether it can or will, nor on Howard's conflict-of-interest concerns.

1  pay, it may only do so to the extent the record substantiates their wealth."[116]  "Indemnification

2  . . . for the payment of [punitive] damages may be taken into account" in the event that the

3  individual defendant claims inability to pay as a reason for reduction.[117]

4        While courts may consider a defendant's ability to pay when assessing the constitutional

5  contours of a punitive-damages award, it is a low-import factor compared to the three guideposts

6  discussed above.  And no parties introduced any evidence of Groover's ability to pay without

7  indemnification, so I have no record evidence to rely on to make that determination.  I thus do

8  not consider Groover's ability to pay when considering the reasonableness of the punitive-

9  damages award here.

10  **E.    Given the altered landscape from resolution of Groover's motion, I deny Howard's**
       **motion for attorneys' fees without prejudice to refiling it in consideration of these**
11       **new circumstances.**

12        Howard litigated this case pro se from its inception until October 3, 2022, when attorney

13  Travis N. Barrick agreed to represent him pro bono.  About a month later, Andréa L. Vieira,

14  Esq., entered her appearance, and on May 26, 2023, Nathan E. Lawrence also file a notice of

15  appearance for Howard.  Howard's three attorneys now seek $70,488.10 for 292.50 hours of

16  work for the approximately nine months they represented him.

17        Fees for civil-rights actions like this one are available under 42 U.S.C. § 1988, which

18  gives courts discretionary authority to award attorneys' fees to the prevailing party in § 1983

19  actions.[118]  The lodestar method is the required starting point for determining the reasonableness

20  of a fee award and is calculated by "multiplying the number of hours the prevailing party

21

22  _____

    [116] *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003) (cleaned up).

23  [117] *Id.*

    [118] 42 U.S.C. § 1988(b).

reasonably expended on the litigation by a reasonable hourly rate."[119]   Requests for attorney's fees must also meet the requirements of this district's local rule 54-14, which requires any fee application to include an attorney affidavit, "[a] reasonable itemization and description of the work performed," and a "brief summary" of 13 categories of information.[120]   After calculating a lodestar figure, the court may review the reasonableness of the award under the factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*[121]

But the Prison Litigation Reform Act (PLRA) alters the first step of that lodestar analysis. The Act states that attorneys' fees "shall not be awarded" unless: "(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights"; "(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation;" and "(B)(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation."[122]   The Ninth Circuit has recognized that the PLRA requires that courts award fees only for the work that proved an actual violation of the plaintiff's rights—meaning that, if a counseled plaintiff prevails on one claim but does not prevail on others, the court may be required to excise fees incurred litigating those unsuccessful claims.[123]

---

[119] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).

[120] L.R. 54-14(a)–(b).

[121] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (citation omitted).

[122] 42 U.S.C. § 1997e(d)(1).

[123] *See Siripongs v. Davis*, 282 F.3d 755, 758 (9th Cir. 2002) (holding that "[t]he plain meaning of an 'actual violation' of plaintiff's rights excludes a violation that has not been proven in fact, but merely has been asserted"); *Dannenberg v. Valadez*, 338 F.3d 1070, 1075–76 (9th Cir. 2003) (vacating and remanding district court's award of all requested attorneys' fees, noting that the plaintiff "did not prevail on all of his claims" and thus the trial court's conclusion that all requested hours were "'directly and reasonably incurred in proving an actual violation of plaintiff's rights' cannot be correct"); *Bell v. Williams*, 2023 WL 4850761, at *6 (N.D. Cal. July

When Howard filed his motion for attorneys' fees, the outcome of this case looked very different than it does now. I've since determined that Howard did not present sufficient evidence to prove an actual violation of his Eighth Amendment rights, leaving only one prevailing claim. The PLRA instructs that I must consider only those fees directly and reasonably incurred in proving an actual violation, but Howard briefed this motion when he'd prevailed on *all* claims. Now that's no longer true, so I deny Howard's motion without prejudice to refiling to address if and how the vacatur of Howard's Eighth Amendment award affects his requested fees. At that time I will also consider renewed arguments about pre- and post-judgment interest based on the reduced award, as well as costs.

## Conclusion

IT IS THEREFORE ORDERED that defendant Kyle Groover's motion for judgment as a matter of law, a new trial, and remittitur **[ECF No. 163] is GRANTED in part and DENIED in part as follows**:

- **Groover's alternative motion for a new trial is DENIED**.

- Groover is entitled to qualified immunity on Howard's Eighth Amendment claim. **That portion of the judgment is VACATED**.

- Groover is not entitled to qualified immunity on Howard's First Amendment claim, so **Groover's request to vacate judgment on that claim is DENIED**.

- **Groover's alternative motion for remittitur is GRANTED in part**: the punitive-damages award for Howard's remaining First Amendment claim is reduced to $45,000, for a total judgment of $50,000.

---

28, 2023) (reducing attorneys' fees award "by one-third to excise time spent on the unsuccessful § 1983 claims").

IT IS FURTHER ORDERED that Groover's motion for leave to supplement **[ECF No. 165]**
**is DENIED**.

IT IS FURTHER ORDERED that plaintiff Reginald Howard's motion for attorneys' fees,
interest, and costs **[ECF No. 156] is DENIED without prejudice to refiling consistent with**
**this order within 20 days**.

IT IS FURTHER ORDERED that **the Clerk of Court is directed to amend the**
**judgment as follows:**

> Judgment is entered in favor of plaintiff Reginald C. Howard and against defendant Kyle
> Groover on Howard's First Amendment retaliation claim in the amount of $50,000.00.
> Judgment is entered in favor of Groover and against Howard on Howard's Eighth
> Amendment deliberate-indifference claim.

_____
U.S. District Judge Jennifer A. Dorsey
December 14, 2023